Dominick Minervini Attorney at law
(ID # 018862001)
299 Julianne Terrace
Secaucus, New Jersey 07094
(201) 470-0712 (T)
(201) 540-8042 (F)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUAN SANTOS, | ) | **Complaint and Jury Demand** |
| Plaintiff, | ) | |
| | ) | Docket No. : To Be Determined |
| v. | ) | |
| | ) | |
| THE INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRIES PENSION FUND, AND TRUSTEES FOR THE INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRIES PENSION FUND, | ) | |
| Defendants, | ) | |

# PARTIES

Plaintiff, Juan Santos, is a member Local 711 of the District Council of the International Painters and Allied Trades Union, and a participant of the International Painters and Allied Trades Union Industry Pension Fund overseen by Defendant Trustees.  Mr. Santos is a resident of the state of New Jersey (residing at 119 Wortylko Street, Carteret, New Jersey).

Defendants, the International Painters and Allied Trades Union Industry Pension Fund and the Trustees for International Painters and Allied Trades Union Industry Pension Fund, (7234 Parkway Drive, Hanover, Maryland, 21076) are responsibility for managing the Pension Fund in accordance with the union's constitution and by-laws as well as the Federal ERISA statute.

# JURISDICTION

The United States Federal District Court has proper jurisdiction over this matter in accordance with 28 USC §1331 as a federal question is raised from a violation of the laws of the United States, specifically, 29 USC §1132, also known as ERISA (The Employee Retirement Income Security Act).  This action is based on 29 USC §1132 (a)(B)(3) of the Act, which states that "a civil action may be brought to recover benefits under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The United States Federal District Court at Newark is the proper venue to hear this matter as the plaintiff is a resident of the state of New Jersey with the Federal District Court seated in Newark, New Jersey being the nearest Federal District court to plaintiff residence of record.

# STATEMENT OF CLAIM

1. Plaintiff, Juan Santos, is a union painter, and a member of the International Painters and Allied Trades Union, District Council 711, and has been since 1989.

2. Mr. Santos has enjoyed a long career as a union painter with Fine and the FCS group, having been continuously employed by these companies since 1989.  As a result of Mr. Santos' dependability and trustworthiness, Fine and the FCS group rewarded Mr. Santos with a series of promotions during his career, where he rose from the rank of apprentice, to journeyman, and ultimately to supervisor. As a supervisor, Mr. Santos was assigned to oversee large jobs that the companies had contracted, responsible for managing the day to day operations of the jobsite as his employer's sole representative.

3. Both Fine and the FCS group are parties to a Collective Bargaining Agreement with the International Painters and Allied Trades Union. Fine and the FCS group, in accordance with the Collective Bargaining Agreement, reported Mr. Santos' work hours to the union and paid contributions into the various benefit plans based on those work hours, including the Union Pension Fund.   The International Painters and Allied Trade Union Pension Fund (also referred to as "the Union Pension Fund" and "the Fund" in this complaint) is administered by co-Defendant, the trustees for The International Painters and Allied Trade Union Pension Fund (also referred to as "the Trustees" in this complaint).  It is important to point out that Union Pension Fund meets the requirements of a covered pension plan as defined by the Employee Retirement Income Security Act.

4. Mr. Santos was responsible for jobsites that were often outside the usual geographic work jurisdiction of his home union local, local 711.  He was asked to oversee jobsites in New

York, Connecticut, Massachusetts, Puerto Rico, among other areas.  Mr. Santos' duties

and responsibilities as supervisor included:

a.  Supplying the necessary equipment and material for the workers on the jobsite to

perform their duties.  Contractual obligations and the union CBA agreement

require that Fine/FCS group to supply the union painters on the job with the

proper tools and materials needed to complete the job.  (See Exhibit A, The

relevant section of the Collective Bargaining Agreement, Article XXVII – Safety,

Section 2).  Mr. Santos was responsible for personally transporting the tools and

equipment as well as other needed supplies from the employer's facilities to the

individual job sites, using his company vehicle.  He was also responsible for

returning supplies back from the various jobsites to Fine/FCS group's facilities.

b.  Writing various reports related to the supervision of the job assignments and the

filing of those reports at the company offices.  These reports include progress

reports, recording work hours of the union employees on the jobsite, and logistic

reports of equipment and materials used to complete the work.  Mr. Santos was

required to regularly drop off these reports at company offices to be timely filed.

c.  Picking up and distributing the companies' payroll to the workers on the jobsite.

Mr. Santos was the companies' on site representative responsible for the weekly

distribution of employee's paychecks as dictated by the Collective Bargaining

Agreement.  (See the Relevant part of the Collective Bargaining Agreement, the

Collective Bargaining Agreement's Article XIV-Payments of Wages states in

Section 1 and Section 2).

d.  As his company's representative on the job site, Mr. Santos, dealt with any and all issues that arose.  As his company's point of contact, he dealt with all manners of issues that cropped up between his employer and his employer's contracted parties on the job site.  Mr. Santos was responsible for meeting with company representatives, walk-throughs with those customers to inspect the work performed, discuss potential problems and work change orders of deviations from the original plans/contracts, and attending business meeting with his company's clients which often occurred outside normal work hours.

5.  In April of 2017, the Union Pension Fund announced a change in the formulation that affected union pension eligibility.  The new rules, effective January 1, 2018, stated that in addition to the prior requirement of accumulating at least 60,000 hours of work under the CBA, the union was extending the age the age of eligibility to receive a pension.  (See Exhibit C - April 30, 2017 letter from the International Painters and Allied Trades Industry Pension Fund).

6.  Following that announcement, Mr. Santos reviewed his accumulated recorded work hours as reported to the union and the Union Pension Fund by his employers.  That review revealed that Mr. Santos' employers, Fine/FCS group, had underreported a considerable number of work hours. These unaccredited hours included time traveled on his company's behalf associated with the transportation of equipment and material to and from job sites, the filing of official company reports and records, the picking up and distribution of company payrolls, and time spent in the interaction with company customers.

7.  Having discovered the discrepancy of work hours, Mr. Santos contacted Fine/FCS group regarding the work hours due him.  Once made aware of the oversight, Mr. Santos' employers acknowledged the omission and agreeing that a substantial number of works hours were not reported, and to correct the record.

8.  Fine/FCS group, corrected the record for Mr. Santos' work hours and accompanying compensation by reporting the missing hours to the Union Pension Fund.  Fine/FCS group, in a letter to the Union Pension Fund, dated December 29, 2017, notified the Fund of additional work hours which were not included in its original reports, along with payment to the Fund for the additional compensation associated with those hours.  (See Exhibit D, letter dated December 29, 2017 from Fine/FCS group to the International Union of Painters and Allied Trade Unions Pension Fund).

9.  Mr. Santos applied for his union pension through the Union Pension Fund.  After applying for his pension, the Union Pension Fund approved his application, and informed Mr. Santos that he was found eligible for a union pension.  Mr. Santos began receiving his monthly union pension shortly afterwards.   (See Exhibit E, letter dated July 12, 2018).

10.  After receiving several pension checks, pension fund terminated Mr. Santos Union Pension.  Mr. Santos was informed by letter that the Trustees suspended his pension, effective October 1, 2018, as the result of an audit of his recorded work hours.  The Trustees stated that the audit found that Mr. Santos had allegedly not accumulated the necessary 60,000 hours to be eligible for a union pension.  Mr. Santos' pension checks stopped and he has not received any since then.  (See Exhibit F, October 18, 2018 letter from the International Painters and Allied Trades Union Pension to Mr. Santos).

11. Almost contemporaneously with the Union Pension Fund's termination of Mr. Santos' union pension, the Fund informed Mr. Santos' former employers, Fine/FCS group, that they had made an error in the correction of Mr. Santos' work hours.  The Union Pension Fund stated in a letter that Fine/FCS group had overcredited Mr. Santos' recorded work hours and contributions paid into Mr. Santos' union pension benefits.  The letter stated that the Union Pension Fund's accounting firm, Novak| Francella, , in an audit of Mr. Santos' work hours for the period of January 1, 2015 through December 31, 2017, found that Fine/FCS group allegedly overcredited work hours to Mr. Santos, and overpaid Mr. Santos' pension benefits for that period.  The letter also stated that Fine/ FCS group were eligible to receive a refund in the amount of the alleged overpayment after confirming that they had made an error and overcredited hours and overpaid Mr. Santos' pension fund account.  (See Exhibit G - November 5, 2018, letter from the Union Pension Fund to Fine/FCS group)

12. Following the termination of his union pension, Mr. Santos filed a timely appeal of the suspension of his benefits.  In accordance with his appeal rights Mr. Santos filed an appeal of the termination of his pension benefits in a letter dated December 10, 2018.  Mr. Santos notified the Trustees that he did in fact accumulate the necessary 60,000 work hours necessary to be eligible for a union pension, and that if there was any shortage of hours, it was the result of an error in the reporting of his work hours by his former employers.  Mr. Santos also requested that the Union Pension Fund conduct an audit of his reported work hours to resolve the discrepancy.  (See Exhibit H – December 10, 2018 letter of appeal of Mr. Santos' union pension from Dominick Minervini, esq. to the Union Pension Fund).

13. Fine/FCS group responded to the Union Pension Fund's November 5, 2018 letter claiming that Fine/FCS group had overpaid/overcompensated Mr. Santos.  Fine/FCS group, in a letter to the Fund, affirmed that the additional work hours it reported to correct the record were not in error, and that those additional hours were due Mr. Santos. Fine/FCS group explained that the error was discovered only after the companies originally filed the monthly work hour and benefits reports, and "Therefore the amount of $16, 193.71 is not an overpayment."  The letter concluded by offering assistance and provided a contact telephone number to resolve any misunderstanding. (See Exhibit I- December 13, 2018 letter from Fine/FCS group to the Union Pension Fund).  There is no evidence that the Pension Fund, the Trustees, or the pension funds accounting firm, Novak|Francella, followed up by contacting Fine/FCS group to investigate.

14. The Union Pension Fund refused to accept Fine/FCS group's 2nd attempt to correct Mr. Santos' reported work hours.  After Fine/FCS group 2nd attempt to correct the record, the Fund once more rebuffed Fine/FCS group's efforts.  The Fund once more stated that Fine/FCS group had overcredited Mr. Santos' work record, and pressed the companies to admit they having made an error.  (See Exhibit J – January 15, 2019 letter from the Union Pension Fund to Fine/FCS group).

15. The Trustees deny Mr. Santos' appeal of the Fund's suspension of his union pension.  In a letter dated April 12, 2019, the Trustees for the Union Pension Fund's notified Mr. Santos that its original decision terminating his union pension was upheld, stating that there was no allegedly no additional information to change its decision.  (See Exhibit K – April 12, 2019 letter from the Union Pension Fund to Mr. Santos).

16. The Trustees' April 12, 2019 decision denying Mr. Santos' appeal of the termination of his union pension represented Mr. Santos' final administrative remedy, no further administrative remedies were available to him.

17. A review of documentation, used by the Trustees in their decision to uphold the denial of pension benefits, show that their original decision was based solely on a pension audit review. The Trustees based their original termination of Mr. Santos' union pension on the Novak|Francella compliance review audit which the concluded that Mr. Santos had not accrued the necessary minimum of 60,000 hours. That audit also explicitly states that it was limited to the material made available to the accounting firm. Specifically, "Our procedures include a review of all pertinent provisions of the collective bargaining agreements and compared underlying payroll records to the Funds contribution records. The scope of this engagement was limited to records made available by the employer." (See Exhibit L – Novak|Francella letter dated June 11, 2018).

18. There is no evidence of any effort by the Trustees, the Union Pension Fund, or its accounting firm, to investigate the disputed discrepancy of recorded work hours. Mr. Santos' former employers were insistent that he was due additional work hours that had previously been omitted in error, and duly attempted to correct the record. The communications from the Union Pension Fund indicates that Fine/FCS group's efforts to correct Mr. Santos recorded work hours were ignored. There is no evidence of any attempt to contact Mr. Santos' former employers, Fine/FCS group, to investigate the conflict of recorded work hours. In fact, the evidence shows that the only effort exerted by the Union Pension Fund, was to press Mr. Santos' former employers, Fine/FCS group, to comply with the Union Pension Fund's version of recorded work hours.

9

19. Mr. Santos was not responsible for any shortcomings in the original recording of his work hours as reported by his employer.  Mr. Santos' former employers, Fine/FCS group, acted responsibly and made a commendable effort to correct the record once the deficiency was discovered.  The Union Pension Fund, and the Trustees, however, failed to investigate the discrepancy after it was brought to their attention.

20. The Trustees for the Union Pension Fund, as managers of the fund, and the Union Pension Fund, have a fiduciary duty to the beneficiaries of the Fund, namely, the participants of the pension fund. The Trustees' responsibilities includes the duty to investigate discrepancies that would ultimately effect eligibility of the participants to receive their union pension benefits.  It is incumbent of the administrators of the plan, and the Fund to investigate the discrepancy of Mr. Santos' reported work hours once that discrepancy of those hours was brought to their attention, and its failure to do so is a breach of their fiduciary duty.

21. Mr. Santos is a member of the International Painters and Allied Trades Union, and a participant in a pension plan covered by the ERISA statute.  After a long career as a union painter satisfied all the requirements, including accruing the necessary number of work hours, to be eligible to receive his union pension.  The Union Pension Fund, and the Trustees for the Union Pension Fund's failure to investigate a discrepancy of recorded work hours, which affected Mr. Santos' eligibility to receive a union pension fund, breached their duty of care due Mr. Santos.  The Union Pension Fund, and the Trustees for the Union Pension Fund's violated  29 USC § 1132 (a)(B)(3) of  the ERISA act by their breach of their fiduciary duty owed to Mr. Santos, a participant of a pension plan covered by the ERISA act.

# REQUEST FOR RELIEF

1. Plaintiff, Juan Santos, prays to the Court for injunctive relief in directing the Trustees for Union Pension Fund find Plaintiff eligible to collect the Union Pension in accordance with the pension plan and to recommence payment of his union pension;

2. Plaintiff, requests of the Court to find for monetary damages in the amount of union pension monies due Mr. Santos from the period of the pension fund's termination of Plaintiff's benefits, to the date of this Court's final decision, and corresponding interest;

3. All reasonable attorney's fees related to the preparation, filing, and prosecution of Plaintiff's complaint; and,

4. Any and all relief in law and equity that this Court deems fair and equitable.

# CERTIFICATION

Under the Federal Rules of Civil Procedure Rule 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Date of signing: July 9, 2020

/s/ Dominick Minervini

Dominick Minervini, esq.

Bar Number: 018862001

Dominick Minervini attorney at law

299 Julianne Terrace

Secaucus, New Jersey 07094

(T) (201) 470-0712

(F) (201) 540-8042

dminervini@yahoo.com